IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| DANNY LYNN ELECTRICAL & PLUMBING, LLC, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:09cv192-MHT (WO) |
| VEOLIA ES SOLID WASTE SOUTHEAST, INC., et al., | ) ) ) | |
| Defendants. | ) | |

OPINION AND ORDER

Relying on <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S.Ct. 1937 (2009), it is ORDERED that the defendants' motion to dismiss (Doc. No. 177) is:

(1) Granted as to the plaintiffs' RICO claims, as explained below.

(2) Denied as to the plaintiffs' breach-of-contract claim, as explained below.

(3) Granted in part and denied in part as to the plaintiffs' unjust-enrichment claim, as explained below.

*** 

The plaintiffs' RICO claims, alleged pursuant to 18

U.S.C.A. § 1962 et seq.: After the court previously

dismissed the plaintiffs' first RICO claims, the

plaintiffs filed a third amended complaint, reasserting

claims under RICO.   They have alleged three separate

enterprises each of which is "legally separate, although,

to the extent necessary, they are each pled in the

alternative."   3d Am. Comp. ¶ 123 (Doc. No. 163).   The

court finds, however, that none of these alleged

enterprises constitutes a valid RICO enterprise and, as

such, the plaintiffs' RICO claims are due to be

dismissed.

The first enterprise alleged by the plaintiffs is:

> "[A]n association in fact consisting of:
> Defendant Richard Burke, Defendant
> Jeffrey Adix, Defendant Paul Jenks,
> Defendant Matthew Gunnelson, Defendant
> James Long, an outside third-party
> 'consultant(s)' (whose role and
> existence is known, but whose name has
> not been discovered yet), along with
> Defendant Veolia ES Solid Waste, Inc.
> ('VES'), Defendant Veolia Environmental
> Services North America Corp. ('VESNA'),

2

> Defendant Veolia ES Solid Waste
> Southeast Inc., Veolia ES Solid Waste of
> New Jersey, Inc., Veolia ES Solid Waste
> of Pennsylvania, Inc., Superior Waste
> Services of New York City, Inc., and/or
> Veolia ES Solid Waste Midwest, LLC.
> Each of these individuals and entities
> are 'persons' within the meaning of 18
> U.S.C. § 1961(4) and 18 U.S.C.
> § 1962(c)."

3d Am. Comp. ¶ 124.  VESNA is the parent company of VES; and Veolia Southeast, Veolia of New Jersey, Veolia of Pennsylvania, Superior Waste Services of New York City, and Veolia Midwest are all wholly-owned subsidiaries of VES.  Of the five individuals named, all are or were officers of VES or VESNA.

The defendants argue that this is an invalid enterprise because "the individuals and entities that comprise the enterprise[] are the exact same individuals and entities named as RICO persons."  Mot. at 20 (Doc. No. 177).  Thus, the RICO "persons" and enterprise are not distinct, as required in this circuit.  See United States v. Goldin Industries, Inc., 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc) (holding that for purposes of

3

18 U.S.C. § 1962(c), there must be a RICO person distinct from the RICO enterprise alleged).

The plaintiffs claim that the Supreme Court's ruling in Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001), forecloses the defendants' argument. In Kushner, the Court held that the defendant individual, who was the president and sole share-holder of a corporation, was a "person" sufficiently distinct from the alleged enterprise, the corporation itself. The Court found that "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." Id. at 163. Therefore, "[a] corporate employee who conducts the corporation's affairs through an unlawful RICO 'pattern ... of activity,' § 1962(c), uses that corporation as a 'vehicle' whether he is, or is not, its sole owner." Id. at 164-65. On the basis of the Court's reasoning, the plaintiffs argue that corporate employees are distinct

4

from the corporations for which they work for the purposes of RICO, such that they have stated a valid RICO claim.

However, the Supreme Court distinguished the facts in Kushner from a case in which "a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise.'" Id. at 164 (discussing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N. A., 30 F.3d 339, 344 (2d Cir. 1994)). The Court noted that "It is less natural to speak of a corporation as 'employed by' or 'associated with' this latter oddly constructed entity." Id. Furthermore, Kushner's holding was limited to situations where "a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner--whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." Id. at 166.

Here, the plaintiffs have alleged an enterprise comprised of parent companies and their subsidiaries,

along with officers and agents of those corporations.  As the Court said in Kushner, it is awkward to conceive of a corporation as "employed by" or "associated with" an entity composed of itself and its related corporations and employees.  See 18 U.S.C. § 1962(c) (forbidding the conduct of an enterprise through a pattern of racketeering activity by "any person employed by or associated with" the enterprise).  In addition to the Second Circuit, cited in Kushner, many other courts of appeal have refused to find a valid RICO claim where the alleged enterprise consists only of a corporation and its employees.  See, e.g., Khurana v. Innovative Health Care Sys., 130 F.3d 143, 155 (5th Cir. 1997), vacated on other grounds, Teel v. Khurana, 525 U.S. 979 (1998) ("The distinctiveness requirement may not be avoided by alleging a RICO enterprise that consists merely of a corporation defendant associated with its own employees or agents carrying on the regular affairs of the defendants.") (internal quotation marks and citation

6

omitted) (quoted in ISystems v. Spark Networks, Ltd.,
2011 WL 2342523, *4 (5th Cir. 2011)); Bessette v. Avco
Financial Services, Inc., 230 F.3d 439, 449 (1st Cir.
2000) ("employees acting solely in the interest of their
employer, carrying on the regular affairs of the
corporate enterprise, are not distinct from that
enterprise."); Bachman v. Bear, Stearns & Co., Inc., 178
F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees,
or a parent and its subsidiaries, are not an enterprise
separate from the firm itself."); Riverwoods Chappaqua
Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d
Cir. 1994) (distinguished and left intact by Kushner, 533
U.S. at 164) ("Nevertheless, by alleging a RICO
enterprise that consists merely of a corporate defendant
associated with its own employees or agents carrying on
the regular affairs of the defendant, the distinctness
requirement may not be circumvented."); Davis v. Mutual
Life Ins. Co. of New York, 6 F.3d 367, 377 (6th Cir.
1993) ("Under the 'non-identity' or 'distinctness'

7

requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself.").

As the cited cases recognize, a corporation and its associated subsidiaries, employees and agents do not form an enterprise that satisfies the distinctness requirement under RICO. Moreover, the plaintiffs have alleged no acts on the part of any of the defendants that fall outside the normal business of the Veolia corporations. The plaintiffs claim their injuries are the result of alleged fraud committed through misrepresentations in invoices and letters sent to the defendants' customers, and published on the defendants' websites, made in an attempt to increase the profits of the Veolia corporations by charging unwarranted fees. Sending invoices is the normal business of a waste-collection

corporation, as is maximizing profits.  Indeed, had the corporate officers not tried to increase profits, they would have been remiss in their duties.  The plaintiffs do not allege that the defendants conspired to take over a legitimate business in order to commit illegal acts (the prototypical RICO scenario), nor do they allege that the Veolia corporations and their employees were associating as an enterprise to do anything other than what the corporations normally do, that is, mail invoices to collect for services rendered and maximize profits. See <u>Atkinson v. Anadarko Bank and Trust Co.</u>, 808 F.2d 438, 441 (5th Cir. 1987) (holding that a bank, its holding company, and three employees did not form an association-in-fact enterprise, and that the alleged predicate act-"mailing of false statements requesting payment of interest in excess of the agreed amount"-was a normal activity of the bank).

As the Supreme Court has stated, "liability depends on showing that the defendants conducted or participated

in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (emphasis original). Here, there is no allegation that the members of the first enterprise were doing anything but conducting their normal affairs, rather than the specific affairs of the enterprise. Therefore, the plaintiffs have failed to state a claim through their first alleged RICO enterprise.

The court similarly finds that the second enterprise put forth by the plaintiffs, as well as the alternative second, or third, enterprise, do not constitute valid RICO enterprises. As described by the plaintiffs,

> "The second enterprise is an association in fact consisting of at least five individuals: Richard Burke, Jeffrey Adix, Matthew Gunnelson, James Long, and Paul Jenks, along with an outside third-party 'consultant(s),' whose role and existence is known, but whose names have not been discovered yet. These individuals are 'persons' within the meaning of 18 U.S.C. § 1961(4) and 18 U.S.C. § 1962(c). These individuals used their positions at various Veolia entities to create, misrepresent, implement, charge, and collect the

10

improper fees and further desiminate
[sic] half truths to customers as set
out herein. By doing so, they profited
directly apart from the profit their
employers received. In the alternative,
this enterprise is a legal entity known
as Veolia Environmental Services North
America Corp. ('VESNA') or Veolia ES
Solid Waste, Inc. ('VES'), with the same
individuals constituting the 'persons'
(Richard Burke, Jeffrey Adix, Matthew
Gunnelson, James Long, Paul Jenks, and
an outside third-party 'consultant(s)')
as that term is used in 18 U.S.C.
§ 1961(4) and 18 U.S.C. § 1962(c)."

3d Am. Comp. ¶ 144.  The defendants argue that a RICO

enterprise cannot consist solely of the named RICO

persons, and cite a series of district court cases

supporting that proposition.  However, the Eleventh

Circuit in <u>Goldin</u> cautioned that "The prohibition against

the unity of person and enterprise applies only when the

singular person or entity is defined as both the person

and the only entity comprising the enterprise."  219 F.3d

at 1275.  That is not the case with the described second

enterprise.  However, it is difficult to conceive of

these five individuals as a distinct entity, because they

are associated only by virtue of their positions at the Veolia corporations. What appears to bring them together is not their common purpose to commit fraud, but their common employment by VESNA and its subsidiaries.

Furthermore, the named enterprise should provide a vehicle for the commission of RICO predicate acts. Goldin, 219 F.3d at 1275 (stating that "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes"). It is unclear how an enterprise consisting of the five named individuals formed a vehicle for the alleged racketeering acts, that is, charging and collecting fraudulent fees. While the named individuals may have helped to come up with the idea of charging customers extra fees and figured out how to do so, they did not complete the acts themselves. Instead, it is the Veolia companies-and ultimately the local divisions that

actually have contracts with customers-that committed the alleged racketeering acts. None of the individual defendants personally charged or collected a fraudulent fee, either alone or in concert with the other individuals, so their association does not provide any sort of vehicle for the fraud alleged. At most, they may have conspired to commit fraud, but RICO requires more than allegations of a conspiracy. <u>See</u> <u>Boyle v. United States</u>, 129 S.Ct. 2237, 2246 (2009) (noting that "Section 1962(c) demands much more [than does proof of a conspiracy]: the creation of an 'enterprise'-a group with a common purpose and course of conduct-and the actual commission of a pattern of predicate offenses."); <u>Fitzgerald v. Chrysler Corp.</u>, 116 F.3d 225, 228 (7th Cir. 1997) ("RICO, however, is not a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy. 'Enterprise' connotes more.").

As for the alleged third enterprise, the defendants state that the plaintiffs "failed to provide any details

regarding the enterprise, its purpose, structure, or duration." Mot. at 16 (Doc. No. 178).  The plaintiffs counter that the defendants have mischaracterized their complaint and that, "The allegations regarding this enterprise are clearly set forth in the ensuing fifteen paragraphs." Resp. at 19 (Doc. No. 196).

The court agrees with the defendants that the plaintiffs have failed to plead adequately the third enterprise.  The paragraphs following the description of the second and third enterprises give no indication of how the third enterprise functioned differently from that of the second enterprise, comprised of the five named individuals.  Furthermore, later paragraphs repeatedly refer to the named individuals as the members of the enterprise, yet for the third enterprise, they are only the RICO "persons."  See, e.g., Comp. ¶ 153 ("the members of the enterprise met regularly"); ¶ 154 ("the members of the enterprise have communicated regularly"); ¶ 158 ("the association of [the individuals] together furnished a

vehicle for the commission of multiple predicate acts"). To satisfy Federal Rule of Civil Procedure 8(a), the plaintiffs' claim must be "plausible on its face," Iqbal, 129 S.Ct. 1937, 1949 (2009), and Rule 9(b) requires that fraud be pled with particularity.  Fed. R. Civ. P. 9(b); see also American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010).  The facts constituting fraud must be alleged "with respect to each defendant's participation in the fraud."  Id.  Since here the third enterprise is not fully set out, how VES or VESNA constitutes the enterprise itself in order to provide a vehicle for the fraud (as opposed to the first enterprise, where the corporations work in concert) is not apparent.

In addition, by alleging that the third enterprise could be either VESNA or VES, the plaintiffs have failed to clearly describe said enterprise.  This appears to be an instance of artful pleading, wherein the plaintiffs have alleged that the enterprise is either VES or VESNA

15

in an effort to avoid a recurrence of the court's previous holding that a parent corporation and its subsidiaries may not form a valid RICO enterprise. However, it is unclear how only one of the Veolia corporations could constitute the entire RICO enterprise, when the gravamen of the plaintiffs' claim is that all of the Veolia companies, with their employees, acted together to perpetrate this scheme. Therefore, the third enterprise also fails.

The plaintiffs' breach-of-contract claim: Defendants have again attempted to provide evidence that the contract clauses at issue are not identical, as claimed by plaintiffs, this time citing an Eleventh Circuit case for the premise that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require

conversion of the motion into a motion for summary judgment." <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997). However, the documents submitted by the defendants are not yet "central to the plaintiff[s'] claim," because the plaintiffs have reproduced the alleged contract language in their complaint, rather than simply refer to the contracts at issue. Therefore, the court repeats that "[t]he scope of ... review must be limited to the four corners of the complaint" when ruling on a motion to dismiss. <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002). The court must "accept[] the facts alleged in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." <u>Id</u>. Based on plaintiffs' allegations in the complaint, a valid breach-of-contract claim has been pled.

<u>The plaintiffs' unjust-enrichment claim</u>: The court will allow the plaintiffs to plead unjust enrichment and breach of contract as alternative theories of recovery.

See Fed. R. Civ. P. 8(e); Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273, 1277-78 (11th Cir. 2006) ("Federal Rule of Civil Procedure 8(e) allows a plaintiff to plead in the alternative ... separate counts of the complaint must be read separately.")

The court agrees, however, that the plaintiffs' unjust-enrichment claim should be dismissed as to the individual defendants because the plaintiffs did not confer a direct benefit on those individuals.  In Alabama, "the essence of ... unjust enrichment ... is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." Hancock-Hazlett General Const. Co., Inc. v. Trane Co., 499 So.2d 1385, 1387 (Ala. 1986) (emphasis original). Under Florida law, "the essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the

18

benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that would make it inequitable for him to retain it without paying the value thereof." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1274 (11th Cir. 2009) (quotation marks and citation omitted). Here, the plaintiffs allege that the fees Veolia Southeast charged for waste removal were intentionally inflated, such that the Veolia companies' profits increased. The named individuals' yearly bonuses were tied to profits, and thus their compensation increased, as well. However, there was no money paid by the plaintiffs to the named individuals. Similarly, there was no benefit conferred upon the individual defendants by the plaintiffs.

Ultimately, any benefit the individual defendants received came from their corporate employers, who paid their bonuses. No direct line has been established between the money paid by the plaintiffs and the compensation received by the individuals, such that it

could be determined what portion of their compensation resulted from the allegedly fraudulent fees. Since the individual defendants enjoyed no direct benefit, the unjust enrichment claim against them is due to be dismissed.

Finally, the plaintiffs have requested leave to amend, should their claims be dismissed. While it is true that a court should give leave to amend "when justice so requires," Fed. R. Civ. P. 159a)(2), a court may also deny such a motion as futile. <u>Coventry First, LLC v. McCarty</u>, 605 F.3d 865, 870 (11th Cir. 2010). Here, the plaintiffs have already had three bites at the apple. Their case was removed to this court on March 6, 2009. They first amended their complaint and added the RICO claims on November 17, 2009. The court then granted leave for the plaintiffs to file a second amended complaint, which they did on September 15, 2010. After the plaintiffs' RICO claims in the second amended complaint were dismissed, the court again granted leave

for them to file the third amended complaint currently under consideration, filed December 22, 2010.  Thus, the plaintiffs have attempted to plead a valid RICO claim in three of their complaints, and have yet to succeed. Their theory of the case has not changed with each pleading, but only the individuals and entities who form the alleged RICO enterprises.  The court does not see how, based on the allegations, the plaintiffs can state a RICO claim that will withstand scrutiny.  It would thus be futile to grant the plaintiffs leave to amend their complaint a fourth time.  Moreover, regardless as to issue of futility, the plaintiffs have been given many times to amend their complaint, and there comes a time when enough is enough.  The plaintiffs' request to amend their complaint again is denied.

DONE, this the 19th day of July, 2011.


        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE